# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION at PIKEVILLE

**CIVIL ACTION NO. 7:08-CV-207-KKC**

**ROY STEVE DAVIS**                                                                 **PETITIONER**

**VS:**                     **MEMORANDUM OPINION AND ORDER**

**J. C. ZUERCHER, Warden**                                              **RESPONDENT**


Roy Steve Davis is confined in the United States Penitentiary-Big Sandy ("USP-Big Sandy"), which is located in Inez, Kentucky. On November 5, 2008, Davis filed a *pro se* Petition for a writ of habeas corpus under 28 U.S.C. § 2241 [Record No. 2]. On November 25, 2008, Davis filed an Amended Petition for a writ of habeas corpus [Record No. 5]. On December 2, 2008, Davis filed a Second Amended Petition for a writ of habeas corpus [Record No. 7].[1] Davis has paid the $5.00 filing fee [Record No. 9].

This matter is now before the Court for full screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). As the petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in a § 2241 petition are taken as true and liberally construed in favor of the petitioner. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

Under 28 U.S.C. §1915(e)(2), a district court can dismiss a case at any time if the court

---

[1] The clerk of the Court will be directed to designate Record No. 7 as the "Second" Amended § 2241 petition.

determines the action is frivolous or malicious, or if it fails to state a claim upon which relief can be granted.  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

SUMMARY OF THE § 2241 PETITIONS
1. Original § 2241 Petition [Record No. 2]
A. July 22, 2008 DHO Report

In Davis's original § 2241 petition [Record No. 2], he challenged a Discipline Hearing Officer's Report ("DHOR") dated July 22, 2008 [Record No. 2-2, pp. 8-11].  The DHOR resulted from a disciplinary hearing which transpired on July 14, 2008 at the Federal Correctional Institution-Schuylkill (FCI-Schuylkill).[2]

On April 11, 2008, Correctional Officer ("CO") M. Pennypacker [Record No. 2-2, p.2] filed an "Incident Report" charging Davis with violating BOP Code No. 218, "Destroying, Altering or Damaging Government Property over $100.00."[3]  Specifically, CO Pennypacker alleged that on April 11, 2008, Davis had thrown a plastic chair at a television set in the housing unit, two or three times, until the television set fell to the floor and broke.

Disciplinary Hearing Officer ("DHO") "K." Bittenbender conducted the hearing on July 14, 2008 [Record No. 2-2, p.8-11]. Davis was present at the hearing and a staff representative, Dr. Tragovic, was also present. Dr. Tragovic had met with Davis in advance [*Id.*, p.8].

The DHO Report reveals that although Davis initially refused to give any statement, he

---

[2] FCI-Schuylkill is a medium security prison which is located in Minersville, Pennsylvania. Davis was  confined in FCI-Schuylkill prior to his transfer to USP-Big Sandy.

[3] The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. § 541.13, Table 3.  The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

2

later denied having certain conversations with his counselor, Mr. Rasinger [Record No. 2-2, p.8].[4] Davis later stated on his behalf that he had filed an administrative remedy concerning his cell assignment but that he had not received a response [*Id*]. Davis told the DHO that he had not slept since arriving at USP-Big Sandy and that he felt threatened [*Id*].[5] The DHO reported that during questioning, "Davis neither admitted nor denied the charge(s). He refused to make any statement and continually stared at the DHO." [*Id*., p. 10].

DHO Bittenbender considered verbal testimony and, in addition to CO Pennypacker's "Incident Report," considered eight (8) supporting memoranda from prison officials. The DHO found Davis of violating BOP Code No. 218  [*See* Record No. 2-2, pp. 10-11].  Part of the documentation upon which the DHO relied was a Memorandum from the Recreation Supervisor, which stated that the television in question was worth $288.56.  Other documentation which the DHO considered was a photograph of the television, depicting the damage caused by Davis's actions [Record No. 2-2, p.3].

The DHO issued a report in which he imposed the following sanctions: (1) monetary restitution of $288.56; (2) disciplinary segregation for twenty-seven days; (3) loss of phone, commissary and visiting privileges for one-year; and (4) the impounding of Davis's personal property [*Id.,* Record No. 2-2, DHO Report , p. 10].

B. Appeal of July 22, 2008 DHO Report

Davis appealed the DHOR to the appropriate Regional Office for the BOP. On June 17,

---

[4] Counselor Rasinger provided an statement to the DHO which was adverse to Davis.

[5] The DHOR states that "upon questioning by the DHO, inmate Davis nether admitted nor denied the charge (s).  He refused to make any statement and continually stared at the DHO." [*Id*].

2008, BOP Regional Director D. Scott Dodrill denied Davis's BP-10 appeal, finding that there was sufficient evidence to support both the DHO's determination of guilt and the sanctions imposed [Record No. 2-2, pp. 5-6]. Dodrill specifically rejected Davis's demand to review surveillance footage of the area where the television set fell. Dodrill explained that because the DHO had not considered the video-tape in finding Davis guilty of the infraction, review of the video-tape was not necessary.

Dodrill disputed Davis's claim that he should be exonerated because there were many other inmates around at the time of the alleged incident. Dodrill noted that the DHO relied on other eyewitness statements which said that Davis was "observed repeatedly throwing a plastic chair at the television until it fell to the floor" [*Id*., p.5].

Davis appealed to the BOP Central Office. On August 20, 2008, Harrell Watts, the Administrator of National Inmate Appeals, denied Davis's BP-11 appeal [Record No. 2-2, p. 7]. Watts determined that in Section V of the DHO Report ("Specific Evidence Relied On To Support Findings"), the DHO had provided an adequate factual basis for finding Davis guilty of damaging federal property. Watts concluded that the DHO Report complied with Program Statement 5270.07, *Inmate Discipline*.

Watts explained that even in cases where there exists a conflict of evidence, the DHO's decision will be upheld where it is based on the "greater weight of the evidence." Watts determined that the DHOR met that threshold requirement; that the sanctions imposed were appropriate, and that the Regional Director correctly denied Davis's BP-10 appeal.

C. Claims Asserted in Original § 2241 Petition [Record No. 2]

In his original § 2241 petition [Record No. 2], Davis alleges that the DHO violated his right to due process of law in violation of the Fifth Amendment of the United States Constitution.   Davis alleges that: (1) the DHO was not neutral; (2) there was insufficient evidence to support the DHO's conclusion that he was guilty of damaging the television; (3) the DHO gave too much credence to the "Incident Report" and other memoranda submitted by BOP officials; (4) the DHO failed to follow the procedural due process requirements of *Wolff v. McDonnell*, 418 U.S. 539, 555-58, 94 S.Ct. 2963, 41 L. Ed.2d 935 (1974)[6]; (5) the DHO denied him the right to present a defense and cross-examine witnesses ; (6) the DHO refused to review an allegedly exculpatory video-tape of the incident, which Davis claims would have shown that he did not damage or destroy the television set;  (7) Davis alleges that he, and/or his staff representative, Dr. Marie Tragovic, the Chief Psychologist, should have been allowed to review the video-tape of the incident ; and  (8) restitution was not justified and the amount established for the value of the television set ($288.56) was excessive.

### 2. First Amended § 2241 Petition [Record No. 5]

Davis amended his initial petition to specifically challenge the assessment of the $288.56 restitution order, arguing that the assessment constitutes a "lien" on his inmate trust account. In support of his claim, Davis submitted a computer-generated "Inmate Statement" prepared by

---

[6] The Fifth the Fourteenth Amendment require several procedural safeguards before an inmate may be punished by the loss of good conduct time for violating prison disciplinary rules. To comply with due process requirements, prison officials must provide the inmate with: (1) advance written notice of the charge against him, (2) a neutral and detached body to conduct a disciplinary hearing, (3) a written record of the disciplinary committee's findings and the evidence relied on in convicting him, and (4) in limited circumstances, the right to call witnesses and present documentary evidence at the hearing. *Wolff,* 418 U.S. at 563-72.

USP-Big Sandy staff dated November 20, 2008 [Record No. 5-2, p.2].[7]

Davis alleges that the BOP's "seizure" of this amount, over his objection, constitutes a taking of his property in violation of the Due Process clause of the Fifth Amendment of the United States Constitution.

### 3. Second Amended § 2241 Petition [Record No. 7]
### A. May 16, 2008 DHO Report

In Davis's Second Amended § 2241 petition [Record No. 7], he challenged the outcome of a completely different disciplinary charge and hearing which had transpired at FCI-Schuylkill, on May 15, 2008. The May 15, 2008 disciplinary hearing transpired **between** the time that Davis had been charged with the television incident (April of 2008) and the July 14, 2008 hearing on the threatening and insolence charge.

The May 15, 2008 disciplinary hearing resulted from an "Incident Report" filed on April 28, 2008, by DHO "K." Bittenbender [Record No. 7-2, p.2]. It appears that "K. Bittenbender" was the same person who presided as DHO over Davis's subsequent July 14, 2008 disciplinary hearing. As discussed *supra*, "K." Bittenbender found Davis guilty of damaging federal property.

Bittenbender alleged that on April 28, 2008, he had presided over yet another, unidentified disciplinary hearing involving Davis at FCI-Schuylkill. While escorting Davis to his cell after that proceeding had concluded, Davis became belligerent and verbally abusive

---

[7] The "Inmate Statement" indicates that the BOP may have attempted to deduct the $288.56 from Davis's inmate account on September 17, 2008 [*Id*]. It appears from that same statement, however, that Davis's inmate account was credited with the $288.56 on or about the same day [*Id*]. While Davis's account activity reveals several smaller deductions from his account between September 17, 2008 and November 20, 2008, they are designated as "Sales" [*Id*.]. As of November 20, 2008, Davis had $300.29 in his inmate trust account [*Id*].

6

toward Bittenbender, shouted obscenities to him, and threatened him with bodily harm. Bittenbender charged Davis with "Threatening Another with Bodily Harm," in violation of Code No. 203, and "Insolence Toward a Staff Member," in violation of Code No. 312 [*Id*].

A disciplinary hearing on these charges ensued on May 15, 2008.  Davis appeared at the hearing and denied the charges. The DHO noted in his report that Davis elaborated on his plea by stating. 'I didn't threaten him.'" [Record No. 7-2, p.10].

On May 16, 2008, "R."  Scandle, the presiding DHO, issued a four-page DHO Report, in which he found Davis guilty of the offenses charged [Record No. 7-2, pp. 8-11]. In Section V of the DHO Report (entitled "Specific Evidence Relied On To Support Findings"), the DHO set forth extensive factual findings supporting his conclusion that Davis was guilty of the charged offenses [*Id*., pp. 9-10].[8]  The DHO concluded that Davis's behavior hampered Bittenbender's ability to perform his duties, demonstrated disrespect and a propensity for violent acts, and caused chaos and disruption of prison security.  DHO Scandle further noted that this incident was the seventeenth time in which Davis had been charged with insolence, and was the

---

[8]  The DHO relied on K. Bittenbender's memorandum, in which Bittenbender stated that at the conclusion of the hearing over which he had been presiding, Davis made disparaging comments to him about his military service and deployment overseas.  According to Bittenbender, Davis began yelling the following comments to him: "You're nothing but a f- - -ing white nigger "; "You're nothing but a coward and was never in Afghanistan or combat"; and "I wish nothing more than death to your family." [*Id*., Record No. 7-2, p. 9].The DHO noted that the Bittenbender had reported that he felt threatened by the tone of Davis's voice, his physical expressions and the content of his statements [*Id*.].

The DHO considered the written reports filed by other prison staff members who either observed or heard Davis screaming at Bittenbender, and who corroborated Bittenbender's allegations. These other reports were submitted by J. Lewis, Senior  Officer Specialist, and R. Miller, Senior Officer, and Marie L. Tragovic, Chief Psychologist.  Tragovic submitted a statement in which she observed that "that during disciplinary hearing against Davis over which he (Bittenbender) was presiding, Davis had become "sullen uncooperative and displayed a poor attitude when told that he could not have another staff representative nor call witnesses that he had not properly requested at an earlier point in time." [Record No. 7-1, pp. 9-10].

ninth time he had been charged with threatening another [*Id.*, p. 11].

On the Code No. 203 Charge, "Threatening Another with Bodily Harm," the DHO imposed the following sanctions: (1) 45 days in disciplinary segregation; (2) the disallowance of 27 days of good-time conduct; and (3) the loss of phone, visitation and commissary privileges for 24 months [*Id.*, p.10].

On the Code No. 312 Charge, "Insolence Toward a Staff Member" the DHO imposed the following sanctions: (1) 21 days in disciplinary segregation; (2) the disallowance of 13 days of good-time conduct; and (3) the loss of phone, visitation and commissary privileges for 24 months [*Id.*, p.10]. In his Report, the DHO noted that this was Davis's **seventeenth** (17th) violation of Code No. 312, "Insolence" and his **ninth** violation of Code No. 203 "Threatening." [*Id.*].

### B. Appeal of May 16, 2009 DHOR

Davis appealed the DHO Report to the BOP Regional Office. On June 16, 2008, BOP Regional Director D. Scott Dodrill denied Davis's BP-10 appeal, finding that there was sufficient evidence to support the DHO's determination of guilt and the sanctions imposed [Record No. 7-2, pp. 5-6]. Dodrill detailed the lengthy verbal insults which Davis had spewed to DHO Bittenbender. He found Davis' argument, that the disciplinary proceedings against him should have been put on "indefinite hold" pending judicial review and "possible congressional and senatorial investigations," lacked any merit [*Id.*].

Dodrill also rejected Davis's contention that he suffered from a mental illness which justified staying the disciplinary hearing which resulted in the sanctions being appealed (the one over which DHO Scandle had presided). Dodrill noted that the prison's Chief Psychologist had

8

submitted a memorandum which stated that prior to the hearing over which Bittenbender presided, Davis had made disparaging remarks to Bittenbender and had threatened him by stating "I wish your family dead." [*Id*.].

Davis appealed to the BOP Central Office. On October 16, 2008, Harrell Watts, the Administrator of National Inmate Appeals, denied Davis's BP-11 appeal [Record No. 7-2, p. 7]. Watts determined that the DHO had employed proper procedures and had set forth an adequate factual basis for finding Davis guilty of the charged infractions, in compliance with Program Statement 5270.07, *Inmate Discipline and Special Housing Units*.

Watts explained that even in cases of conflicting evidence, the DHO's decision will be upheld if it is based on the "greater weight of the evidence." Watts determined that the DHO Report satisfied that threshold requirement; that the sanctions imposed were appropriate, and that the Regional Director correctly denied Davis's BP-10 appeal.

C. Claims in Second Amended § 2241 Petition

In his Second Amended § 2241 petition [Record No. 7], Davis alleged that his Fifth Amendment right to due process of law had been violated in connection with the earlier May 16, 2008 DHO Report. Specifically, he alleged that the DHO failed to follow the procedures required by *Wolff*. Davis claimed that the sanctions imposed were excessive and that DHO Scandle had acted arbitrarily and capriciously in finding him guilty of insolence and threatening another.

In addition to these claims, which fall under the ambit of a § 2241 challenge to a disciplinary hearing, Davis asserts broad claims of "alleged retaliation" under the First Amendment of the United States Constitution [Record No. 7, p.3]. Davis also asserts other

9

broad claims of "intentional discrimination" under "the Equal Protection Clause." [*Id.*, p. 4].

DISCUSSION

1. Claims Set Forth in Original § 2241 Petition
and First Amended § 2241 Petition [Record Nos. 2 and 5]

For five reasons, the Court will dismiss the Fifth Amendment claims set forth in the original § 2241 petition and the First Amended § 2241. Both of these filings pertained to Davis's disciplinary conviction for damaging federal property (the television set).

First, the Court recognizes that DHO "K." Bittenbender presided over Davis's disciplinary hearing on the property damage claim almost three months *after* he (Bittenbender) had filed an "Incident Report" against Davis, which resulted in Davis being convicted and sanctioned for insolence and threatening conduct. Davis alleges that by the time Bittenbender presided over the property damage charge in July of 2008 (three months later), Bittenbender had a natural bias against him, thus finding him guilty on the damaging property charge.

For Due Process purposes in prison disciplinary hearings, "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in circumstances underlying the charge." *Speight v. Minor*, 245 Fed. Appx. 213 (3d Cir.2007) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir.1974)). Here, there is no record of DHO Bittenbender having any personal involvement in the circumstances underlying Davis's charge *of damaging or destroying federal property*.

"Due Process has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer." *Vitek v. Jones*, 445 U.S. 480, 499, 100

10

S.Ct. 1254 (1980). Thus, Davis is not entitled to relief on his challenge to the impartiality and competence of K. Bittenbender with respect to the "Damaging Federal Property" charge.

Second, the Court examines the sanctions imposed in order to determine if Davis lost anything in which he had a protected liberty interest, under the Fifth Amendment, as a result of Bittenbender's ruling. The focal point is whether Davis lost any good-time credits.

The DHO Report [Record No. 2-2] does not reveal that Davis lost good-time credits as a result of this disciplinary proceeding. Davis does not allege such a loss. Only the loss of good time credits could have affected the duration of his sentence. While Davis was placed in disciplinary segregation for 27 days, such confinement, absent the loss of good time credits, does not establish either a valid Fifth or Eighth Amendment claim. *Sandin v. Conner*, 515 U.S. 472, 484-86, 115 S. Ct. 2293 (1995);[9] *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997).

The other sanctions which were imposed (temporary loss of phone, visitation and commissary privileges) also fail to give rise to an actionable challenge under the Fifth Amendment . The law is well established that the temporary loss of privileges does not constitute a loss of a liberty interest in which prisoners have vested rights. *See*, *e.g.*, *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir.1996) (denial of access to privileges such as social and rehabilitative activities not an atypical and significant hardship); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d

---

[9] In *Sandin*, a state prisoner challenged his 30-day sentence to segregation after the prison adjustment committee followed a prison regulation in determining Sandin's guilt. The question was whether the regulation created a liberty interest which would have entitled him to substantial due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

The Supreme Court determined that neither the Due Process Clause nor the Hawaii prison regulation at issue created a liberty interest such as to trigger due process procedural protections set forth in *Wolff*. The Court stated that " . . . Conner's discipline in segregated confinement did not represent the type of atypical, significant deprivation in which a state might conceivably create a liberty interest . . ." *Id*. at 483-84. *Sandin* focused not on the content of the regulations, but on the "nature of the deprivation" visited upon the inmate. *Id*. at 481.

Cir.1996) (loss of commissary, recreation, package, and telephone privileges not an atypical and significant hardship).[10]

"Under *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence and there is no evidence here that the segregation will impact plaintiff's sentence." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir.1998). Here, Davis does not allege that the length of his confinement/sentence was adversely affected by reason of the sanctions imposed in the July 22, 2008 DHO Report.

Third, a disciplinary action should be upheld if it is supported by "some evidence." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774, 86 L. Ed.2d 356 (1985). This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. A DHO is not required to base his finding on overwhelming or irrefutable proof of guilt. He is only required to base a finding of guilt on "some evidence."

Federal courts do not assess credibility or weigh the evidence when reviewing a disciplinary conviction. In *Superintendent v. Hill*, the Supreme Court held that:

> [a]ssuming that good time credits constitute a protected liberty
> interest, the revocation of such credits must be supported by
> some evidence in order to satisfy the minimum requirements of
> procedural due process . . . . [a]scertaining whether the "some

---

[10]See also Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb.1996) (temporary restriction of privileges such as free access to law library, circulating library, yard, and central dining area not atypical and significant hardship). Nor does the imposition of assignment of extra duty. *Samford v. Staples*, 249 Fed. Appx. 1001, *1004 (5th Cir.2007) ("The disciplinary sanctions included curtailed recreation and commissary privileges, assignment of extra duty, temporary solitary confinement, and a reduction in his classification status. Because the sanctions imposed upon Samford did not represent atypical or significant hardships, they did not infringe upon a constitutionally protected liberty interest and the disciplinary hearings that resulted in those sanctions did not implicate the Due Process Clause.").

> evidence" standard is satisfied does not require examination of
> the entire record, independent assessment of witnesses'
> credibility, or weighing of the evidence, but, instead, the
> relevant question is whether there is any evidence in the record
> to support the disciplinary board's conclusion.

*Id.* at 454-55.

Therefore, a district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes. *Id.* at 455. A review of a decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt. A district court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Id.* at 457.

The only question is whether the DHO had "some evidence" in the record justifying his finding of guilt on the violation. The threshold requirement of only "some evidence" is a relatively low one. Here, DHO Bittenbender relied on the written reports prepared by various staff members which corroborated the "Incident Report." He also relied on information submitted by prison personnel as to the extent of the damage and the replacement value of the television [*See* Photo, Record No. 2-2, p.3] The DHO discussed the following reports:

(1)     Memorandum from Lt. Bonnell, who witnessed Davis throw the chair at the television set on the relevant date.

(2)     Memorandum from Counselor Rasinger, who discussed at length conversations he had with Davis, which conversations revealed to Counselor Rasinger that Davis was angry, threatening aggressive, and violent. Rasinger stated that Davis had informed him that he had a history of assaulting other inmates and that he (Davis) was unhappy about his cell

13

assignment.

(3)    Memorandum from "Mr. Thompson," who stated that the replacement cost of
       the

television set was $288.560.

The DHO Report reveals that at the hearing, Davis initially denied his guilt in the episode, but that "upon questioning, Davis nether admitted nor denied the charge (s).  He refused to make any statement and continually stared at the DHO." [Record No. 2-2, DHO Report, p. 10].  The DHO was free to assign whatever weight or credibility he deemed proper to Davis's version of the event, his denial of guilt, or any excuses he offered at the hearing, such as feeling threatened.  He was free, as the finder of fact, to assign **no** weight to Davis's statements.

Given the number of adverse reports about Davis's violence and aggression, the DHO properly determined that the greater weight of the evidence pointed toward Davis' guilt on the charge of damaging federal property.  Clearly there was "some evidence" on which to support the finding and the amount of restitution ordered.

Fourth, Davis disputes the BOP's ability to order restitution as part of his sanction. This argument lacks merit, because courts have upheld restitution as part of disciplinary proceedings.  *See Troxell v. Chapleau*  1996 WL 668548, 1 (6th Cir. (Tenn.). November 18, 1996) (prisoner alleged that he had been deprived of property in violation of his due process rights when he was ordered, as a result of a disciplinary hearing, to pay restitution for damage he caused to a dishwasher; district court's entry of  summary judgment was affirmed); *White*

14

*v. Golder*, 245 Fed. Appx. 763, 2007 WL 2309797 (10th Cir. (Colo.), 2007) (Prisoner failed to show that requiring him to pay the medical costs associated with fight after he was found guilty of disciplinary violation, violated his equal protection rights, even if other inmates were not ordered to pay restitution).[11]

Fifth , and finally, the disciplinary proceeding complied with the requirements established in *Wolff*. As for Davis's claim that he, or his representative, should have been allowed to view the video-tape of the chair- throwing event, this claim lacks merit and will be dismissed. Other courts have addressed claims from prisoners who have similarly challenged a DHO's exclusion of, or failure to independently review, the video-tape of a contested incident. The Courts have concluded that the DHO's decision not to review video-tape evidence does not constitute a denial of due process under *Superintendent v. Hill* and *Wolff*.

In *Cruzen v. Haynes*, 2007 WL 3146383 (N. D. W. Va. October 25, 2007) (Only Westlaw citation currently available), inmate Cruzen argued his Fifth Amendment right to due process of law was violated when the DHO refused to independently review a video at a disciplinary hearing instead of merely relying on a summary of the video prepared by inmate's counselor. The district court rejected that challenge, stating that due process was satisfied because there was "some evidence" to support the conviction, even without the

---

[11] *See also Saenz-Lopez v. Bureau of Prisons*, 2000 WL 1039323, 1 (7th Cir. (Ill.), July 25, 2000) (Unpublished Opinion) (in a prison disciplinary proceeding, the prisoner was found guilty of assaulting another inmate and causing serious injury and was placed in disciplinary segregation for 30 days, ordered to pay $902.50 in restitution, and lost 41 days of good time credits and 730 days of commissary privileges; the conviction and all sanctions were upheld on appeal); *Walker v. Wagle,* 1999 WL 68746, 1 (9th Cir. (Cal.), February 11, 1999) (Unpublished Opinion) (where prisoner was found guilty of setting fire to the prison Food Service Department and was sanction to loss of 300 good-time days, disciplinary transfer, 60 days disciplinary segregation, and was ordered to pay restitution in the amount of $104.06, sanctions were upheld on appeal).

15

benefit of the DHO independently watching the video tape. *Id* at *3 (overruling prisoner's objections to Report and Recommendation of Magistrate Judge); *See also Hadden v. Mukasey*, 2008 WL 2332344 (S. D. N. Y., June 3, 2008) (Only Westlaw citation currently available) ("some evidence" requirement of *Superintendent v. Hill* was supported by DHO's reliance on the report and summary of disputed incident prepared by the inmate's counselor; as surveillance videotape was not offered as evidence against the inmate, the DHO did not violate the inmate's Fifth Amendment rights by refusing to independently review the video); and *Landry v. Adams*, 2007 WL 869224 (E.D. Va., March 19, 2007) (Only Westlaw citation currently available) ("The record further demonstrates that the evidence presented by the investigating officer to the DHO was sufficient to support the punishment petitioner received. As such, petitioner's due process rights were not violated by the absence of additional evidence in the form of video surveillance footage.").

### 2. Claims Asserted in Second Amended § 2241 Petition [Record No. 7]

The Court will dismiss the claims set forth in the Second Amended Petition [Record No. 7]. The Court finds that under the criteria established *Superintendent v. Hill*, there was more than "some evidence" that Davis was guilty of "Threatening Another with Bodily Harm," in violation of Code No. 203, and "Insolence Toward a Staff Member," in violation of Code No. 312 [*Id*].

The Court has discussed that DHO Scandle relied on numerous reports from prison staff which incriminated Davis in the acts of threatening DHO Bittenbender and demonstrating insolence towards him on the relevant date. Included in these reports was the memorandum prepared by Marie L. Tragovic, Chief Psychologist at the prison, which substantiated the DHO's

16

conclusion that Davis had aggressive and violent propensities and that Davis had made threatening comments about DHO Bittenbender.

As DHO Scandle noted in his Report, Davis had **sixteen** prior charges lodged against him for insolence toward staff members, and had **eight** prior disciplinary charges filed against him for threatening others [Record No. 7-2, p.9]. Additionally, Davis admitted to the DHO that he was disrespectful to DHO Bittenbender, although he denied he threatened him [*Id*., p. 8].

Davis now argues in his Second Amended § 2241 Petition that he suffered from mental conditions such as Post Traumatic Stress Disorder, "hypomania," and "acute episodes with elevated and depressed mood swings" [Record No. 7, p.2].  He argues that his mental condition excuses his conduct and should relieve him of the sanctions.

The DHO Report of May 16, 2008 reveals, however, that at the hearing, Davis offered **no** testimony or documentation concerning his alleged mental conditions for the DHO to consider as any kind of mitigating factor. Under the section of the DHO Report entitled "Summary of Inmate Statement," the DHO wrote:

> **DAVIS** stated, "I didn't threaten him." **DAVI**S stated, "I admit that I was disrespectful."
>
> No procedural issues were cited, nor was nay documentary evidence provided for consideration.

[Record No. 7-2, p.8].

Clearly, by not putting the issue of mental capacity before the DHO, Davis waived any argument regarding his mental capacity. Even had it been presented at the hearing, there was still "some evidence" to support the finding of guilt.  As noted, a district court's role is not to re-try

17

a prison disciplinary hearing.  Federal courts will not review the accuracy of a disciplinary committee's finding of fact. *Kelly v. Cooper*, 502 F. Supp. 1371,1376 (E. D. Va.1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.1981), *cert. denied*, 455 U.S. 992 (1982). DHO Scandle's findings were not wholly arbitrary and capricious. The Court determines that the Second Amended § 2241 petition lacks merit and should be dismissed.

## 2. First Amendment Retaliation Claims and Fifth Amendment Discrimination Claims

In his Second Amended § 2241 Petition, Davis alleges that his constitutional rights were violated at FCI-Schuylkill. He alleges a First Amendment "retaliation"claim and a Fifth Amendment "intentional discrimination" claim. These two new claims will be dismissed *without* prejudice.

Section 2241 may be used by a prisoner to challenge decisions affecting the manner in which his sentence is being carried out, such as the computation of sentence credits or parole eligibility.  *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1999). Any construed Eighth Amendment claims are not properly asserted in this § 2241 petition, because they do not affect the length or duration of Cosgrove's federal sentence. These construed claims will be dismissed without prejudice to Cosgrove asserting them in a proper civil rights complaint.[12]

---

[12] Davis is advised of three items in the event his wishes to file a separate civil action on the Eighth Amendment claims.  First, the filing fee for a civil action is $350.00, although a prisoner may seek pauper status whereby he would be permitted to remit installment payments on the filing fee.

Second, before filing a lawsuit in federal court regarding conditions of confinement, federal law requires that a prisoner fully exhaust each and every such claim through the BOP's three-step administrative remedy procedure. *See* Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. 1997e(a );   *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999).

Third, a *Bivens* civil complaint would have to be filed in a federal court in Pennsylvania, not Kentucky.

18

Claims which challenge the conditions of confinement can be raised only in a *Bivens* civil rights action filed under 28 U.S.C. § 1331. They are not properly before a district court when asserted in a habeas corpus petition filed under 28 U.S.C. § 2241. *See  Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (proper course for the district court, after it determined that the substance of the petition was a subject more appropriately reached under § 1983, was to dismiss the petition without prejudice to allow petitioner to raise his potential civil rights claims properly as a § 1983 action). These claims will be dismissed without prejudice.  As this action will be dismissed, Davis's "Motion for Show Cause Order" [Record No. 11] will be denied as moot.

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1)     The Clerk of the Court is directed to docket Record No. 7, the submission filed by Roy Steve Davis, as the "Second" Amended § 2241 Petition for Writ of Habeas Corpus.

(2)     The "Motion for Show Cause Order" [Record No. 11] filed by Petitioner Roy Steve Davis is **DENIED** as **MOOT**.

(3)     Petitioner Roy Steve Davis's Fifth Amendment due process claims  stemming from his conviction for violating BOP Code No. 218, "Destroying, Altering or Damaging Government Property over $100.00" are **DISMISSED WITH PREJUDICE**.

(4)     Petitioner Roy Steve Davis's Fifth Amendment due process claims, stemming from his convictions for violating BOP Code No. 203 "Threatening Another with Bodily Harm" **and** BOP Code No. 312, "Insolence Toward a Staff Member" are **DISMISSED WITH**

---

This Court would have **no** personal jurisdiction over any FCI-Schuylkill employees located in Pennsylvania.

19

**PREJUDICE**.

(5)     Roy Steve Davis's civil rights allegations of: (A) First Amendment "retaliation" and (B) Fifth Amendment "intentional discrimination," set forth in Record No. 7, are **DISMISSED WITHOUT PREJUDICE** to Davis asserting them in a 28 U.S.C. § 1331 civil rights action, filed in proper jurisdiction.

(6)     Petitioner Roy Scott Davis's Petition for a writ of habeas corpus [Record No. 2]; his Amended Petition for a Writ of Habeas Corpus [Record No. 5]; and his Second Amended § 2241 Petition [Record No. 7] are **DENIED.**

(7)     This action is **DISMISSED**, *sua sponte,* from the Court's active docket.

(8)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

Dated this 6th day of March, 2009.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

20